UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
WESSLEY LAROQUE;  
JEAN CLAUDE SAINT-ELOI;  
JEAN LISVONCE; and BRANT BISSAINTHE;  
on behalf of themselves and other employees  
similarly situated,

      Plaintiffs,     **MEMORANDUM AND ORDER**
                06-CV-6387 (DLI) (VVP)

  -against-

DOMINO'S PIZZA, LLC,

      Defendant.
----------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

  Plaintiffs Wessley Laroque, Jean Claude Saint-Eloi, Jean Lisvonce, and Brant Bissainthe were all employed, for varying amounts of time between 2001 and 2006, by defendant Domino's Pizza, LLC ("Domino's") as delivery drivers at the Domino's store located at 900 Coney Island Avenue, Brooklyn, NY, 11218 (the "Coney Island Store"). Plaintiffs bring this lawsuit on behalf of themselves and a putative class of similarly situated individuals, alleging that Domino's violated the Fair Labor Standards Act ("FLSA") and New York State Labor Law by failing to fully compensate them for the hours they worked, and by failing to pay overtime wages for the hours they worked in excess of forty per week. On September 25, 2007, plaintiffs moved the court, pursuant to Section 216(b) of the FLSA, for preliminary collective action certification, approval of a "Notice of Lawsuit" to be sent to all potential plaintiffs, and an order directing Domino's to produce the names and last known address of each potential plaintiff. Thereafter, on March 25, 2008, plaintiffs moved the court for an extension of time, pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, to file two additional affidavits in support of the pending motion. For the reasons set forth below, plaintiff's motion for an extension of time is granted

and the additional affidavits have been considered. Furthermore, collective action certification is preliminarily approved insofar as the plaintiff class shall consist of all delivery drivers and customer service representatives who worked at the Coney Island Store within the past three years, i.e., between May 30, 2005 and May 30, 3008, but is denied as to the employees of the other stores owned and operated by Domino's that plaintiffs identify in their complaint. Within ten business days from the date of this order, i.e., by June 13, 2008, plaintiffs are directed to amend the "Notice of Lawsuit" and submit the amended version for the court's approval, and Domino's is directed to produce the name and last known address of each potential plaintiff.

## I. Background

Plaintiffs propose a putative class consisting of all delivery drivers and customer service representatives who worked at the Coney Island Store within the past three years, as well as all delivery drivers and customer service representatives who worked at the following Domino's locations during the same time period: (1) 1555 Nostrand Avenue, Brooklyn, New York, 112266; (2) 1772 Ralph Avenue, Brooklyn, New York 11236; (3) 1972 Flatbush Avenue, Brooklyn, New York 11234; (4) 3901 4th Avenue, Brooklyn, New York 11232; and (5) 1479 Fulton Street, Brooklyn, New York 11216 (collectively, the "Brooklyn Area Stores").

Each of the named plaintiffs submitted an affidavit alleging he was not fully compensated for the hours he worked while employed as a delivery driver at the Coney Island Store. Wessley Laroque, employed by Domino's from approximately the spring of 2005 until June 2006, claims that Domino's management regularly required him to continue working after he clocked out for the day, and edited his computerized time records, and thus he was paid for significantly fewer hours than he actually worked. (Laroque Aff. ¶¶ 3-7.) Laroque further alleges that these policies

2

also prevented him from receiving proper overtime compensation, as the hours he worked in excess of forty per week were not reflected in his paychecks. (*Id*. at ¶ 5.)

Brant Bissainthe worked at the Coney Island Store from approximately the fall of 2005 until May 2006, and also accuses Domino's management of reducing his hours and requiring him to work off-the-clock. (Bissainthe Aff. ¶¶ 2-11.) Bissainthe further alleges that he was forced to reimburse Domino's after someone stole between $80 and $90 of delivery money from his locker at the Coney Island Store, and that Domino's forced him to cover the loss and failed to conduct an investigation into the incident. (*Id*. at ¶ 12.) Jean Lisvonce worked at Domino's from approximately November 2001 until June 2006, and alleges that he was required to work off-the-clock. (Lisvonce Aff. ¶¶ 2-5.) Likewise, Jean Claude Saint-Eloi, a Domino's employee from approximately the fall of 2004 until August 2006, alleges that he too was required to continue working after he clocked out. (Saint-Eloi Aff. ¶¶ 2-4.)

Martine DeLesca, although not a plaintiff, submitted an affidavit stating that she worked as a customer service representative at the Coney Island Store from approximately the fall of 2004 until April 2005, and that, during that time, she was required to work off-the-clock. (DeLesca Aff. ¶¶ 2-5.) DeLesca also states that there often were discrepancies between the hours she worked and the hours for which she was paid. (*Id*. at ¶ 6.) The plaintiffs and DeLesca further allege that numerous other employees at the Coney Island Store were forced to work off-the-clock and had their hours reduced by Domino's management. Laroque asserts that two assistant managers, Ahmad Azfar Sharza and a man identified only as "Joseph," both of whom had worked at several Brooklyn Area Stores in addition to the Coney Island Store, informed him that Domino's intentionally underpaid its hourly employees at all of the stores where they had worked. (Laroque Aff. ¶¶ 10-11.) Laroque also claims that an individual named Margareth St.

3

Cyr ("St. Cyr"), who worked as a delivery driver at the Brooklyn Area Store located at 1772 Ralph Avenue, informed him that her hours were reduced by Domino's management. (*Id.* at ¶ 12.) According to Laroque, St. Cyr stated to him on one occasion that, "when you work overtime[, Domino's] pays you for less than 40 hours." (*Id.*)

Subsequent to filing their motion for collective certification, plaintiffs filed a motion under Rule 6(b) asking the court to consider the affidavits of Emile Zama ("Zama") and Monel Marseille ("Marseille") in further support of the certification motion. Domino's employed Zama as both a delivery driver and an assistant manager from 1995 to 2003 at five different locations in Brooklyn, including the Brooklyn Area Store located at 1479 Fulton Street. (Zama Aff. ¶ 1.) Zama alleges that he was forced to work off-the-clock at every Domino's location where he was employed. (*Id.* at ¶¶ 4-5.) Zama further states that he knows his time records were altered by Domino's management at three locations where he worked, not including the Fulton Street location, and that he suspects that his time records were altered at the other locations as well. (*Id.* at ¶¶ 6-7.) Finally, Zama alleges that he was not allowed to take meal breaks, and that, as an assistant manager, he was directed to keep the cost of labor to a minimum. (*Id.* at ¶¶ 2-9.) Monel Marseille worked as a delivery driver and a customer service representative for Domino's at its store located at 1763 Union Street in Brooklyn from 2001 until July 2003, and alleges that, during his employment, his hours were reduced by Domino's management and he was required to work off-the-clock. (Marseille Aff. ¶¶ 1, 3-5.)

In opposing plaintiffs' certification motion, Domino's submitted a variety of documents, including affidavits from management and corporate personnel, detailing Domino's method of computing employee time and their policy of paying their hourly employees for the full amount of hours that they worked. One such affidavit was from Sharza, who refuted Laroque's

allegation that he told Laroque of a widespread policy of under-compensating hourly employees at the Brooklyn Area Stores. (Sharza Aff. ¶ 12.) Another affidavit submitted by Karl De Nazareth, a Domino's employee responsible for providing human resources support to the Brooklyn Area Stores, noted that Domino's had no record of anyone named Margareth St. Cyr ever working at the 1772 Ralph Avenue Store. (De Nazareth Aff. ¶ 24.)

Domino's also submitted two "Payroll Changes Reports" detailing the changes made to the time records of employees at the Coney Island Store in 2006. The first report lists the changes made to the time records of the four plaintiffs, and the second report lists the changes made to the time records of the other delivery drivers and customer service representatives identified by plaintiffs in their motion papers. (Mayer Aff., Ex. A, B.) These records indicate that, in 2006, no changes were made to the time records of Lisvonce and Saint-Eloi, Bissainthe's records were edited once, and Laroque's records were edited ten times over a four-month period. (*Id*. at Ex. A.) Of the eleven other Coney Island Store employees mentioned in plaintiff's filings, only six had their time records edited in 2006. (*Id*. at Ex B.) Domino's contends that all of these edits were made to correct the employees' "clock in" and "clock out" times in order to more accurately reflect the hours that the employees actually worked. Domino's did not submit any records for any of the other years that plaintiffs worked at the Coney Island Store.

## II.    Plaintiffs' Motion under Rule 6(b)

Subsequent to filing their certification motion, plaintiffs filed a motion asking the court to enlarge the time in which they could file affidavits in support of the original motion, so that the court could consider the affidavits of Zama and Marseille. Generally, affidavits must be served contemporaneously with the motion that they support. Fed. R. Civ. P. 6(c)(2). Rule 6(b), however, provides that "[w]hen an act may or must be done within a specified time, the court

5

may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). This grant of discretion applies to any temporal requirement found in the Federal Rules, unless expressly excepted, which the requirement regarding service of affidavits is not. *See Raymond v. Int'l Business Machines Corp.*, 148 F.3d 63, 66 (2d Cir. 1998) (quoting *Pioneer Investment Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 389 n.4 (1993)); Fed. R. Civ. P. 6(b)(2). Therefore, the court may consider the Zama and Marseille affidavits if plaintiffs can establish "excusable neglect" for failing to file the affidavits with the original motion. In determining what constitutes excusable neglect for the purposes of granting an extension, district courts should conduct an equitable inquiry, "taking account of all relevant circumstances surrounding the party's omission, including prejudice to the other party, the reason for the delay, its duration, and whether the movant acted in good faith." *Raymond*, 148 F.3d at 66 (quoting *Pioneer*, 507 U.S. at 395) (internal quotation marks omitted).

Plaintiffs' initial certification motion was filed on September 25, 2007, and their motion for an extension of time was served on Domino's on March 3, 2008. Plaintiffs contend that they delayed filing the additional affidavits because Laroque, despite having known Zama for some time, was unaware until recently that Zama had also worked for Domino's. After learning of this litigation, Zama then put plaintiffs in contact with Marseille. Domino's offers no reason to doubt this explanation, but instead argues that the affidavits are irrelevant because neither Zama nor Marseille worked at the Coney Island Store or the other Brooklyn Area Stores within the past three years, and thus, neither can bring a timely FLSA claim against Domino's arising from their employment at any of the stores identified in plaintiffs' complaint. Regardless of the merits of this argument, it does not demonstrate that plaintiffs' delay was a result of bad faith, or that

Domino's will be prejudiced by the court's consideration of the additional affidavits. Accordingly, plaintiffs' Rule 6(b) motion is granted, and the court will consider the affidavits of Zama and Marseille—as well as Domino's arguments as to why those affidavits fail to support certification—in connection with the underlying motion.

## III. Plaintiffs' Motion under Section 216(b) of the FLSA

Plaintiffs move to preliminarily certify this case as a collective action, define the group of potential plaintiffs, compel Domino's to produce the names and last known addresses of the potential plaintiffs, and allow notice to be sent to the potential plaintiffs. Pursuing FLSA claims collectively is contemplated by Section 216(b) of the FLSA, which provides that an action under the FLSA to recover unpaid wages:

> [M]ay be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C.A. § 216(b). District courts have discretion under this section to direct a defendant employer to disclose the names and addresses of similarly situated potential plaintiffs and to authorize the sending of notice to these individuals, so that they may "opt in" to the collective action. *See Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (citing *Hoffmann-La Rouche, Inc. v. Sperling*, 493 U.S. 165, 110 (1989)). Once a plaintiff opts in to a collective action by filing notice with the court, the statute of limitations on their FLSA claim is tolled. *Levy v. Verizon Information Servs., Inc.*, No. 06-CV-1583, 2007 WL 1747104 at *3 (E.D.N.Y. June 11, 2007) (citing *Sbarro*, 982 F. Supp. at 260).

In determining whether a matter should proceed as a collective action, courts follow a two-step process, looking first to the pleadings and affidavits to determine whether the putative

class members are "similarly situated." *Jacobs v. New York Foundling Hospital*, 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007) (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)). If the plaintiffs can satisfy a minimal burden of showing that they are similarly situated to the potential class members, the court certifies the class and provides for notice to be sent to the potential class members who are then given the chance to opt in to the action. *Id*. After discovery, a second inquiry begins, generally precipitated by a defendant's motion for decertification, in which the court examines with a greater degree of scrutiny whether the members of the plaintiff class—including those who have opted in—are similarly situated. *Id*.; *see also Torres v. Gristede's Operating Corp.*, No. 04-Civ-3316, 2006 WL 2819730 at *9 (S.D.N.Y. Sept. 29, 2006) (noting that "[p]ost-discovery . . . the Court applies heightened scrutiny to [the similarly situated] inquiry as compared to pre-discovery") (citation omitted). If the court is satisfied at this stage that the class members are similarly situated, the collective action proceeds to trial; otherwise, the court decertifies the class, and the class members must pursue their claims individually. *Jacobs*, 483 F. Supp. 2d at 265 (citing *Lee*, 236 F.R.D. at 197).

Although the Second Circuit has yet to prescribe a particular method for determining whether members of a putative class are similarly situated, district courts in this circuit look to the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class." *Guzman v. VLM, Inc.*, No. 07-CV-1126, 2007 WL 2994278 at *3 (E.D.N.Y. Oct. 11, 2007) (collecting authority) (internal quotation marks omitted). At this preliminary stage, plaintiffs can satisfy their burden "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Sbarro*, 982 F. Supp. at

261 (collecting authority). *See also Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) ("A plaintiff's burden is minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one.") (citations and quotation marks omitted); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001) ("Generally, at the notice stage, courts require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.") (citations and quotation marks omitted). Keeping in mind the preliminary posture of this litigation, as well as the FLSA's remedial purpose, the court considers whether plaintiffs have sufficiently demonstrated that they are similarly situated to the other hourly employees at the Coney Island Store, and the hourly employees at the five other Brooklyn Area Stores.

A. The Coney Island Store

Each of the four named plaintiffs has submitted an affidavit alleging that he was denied proper compensation, in violation of the FLSA, while employed as a delivery driver at the Coney Island Store. DeLesca, a putative class member, alleges that while employed as a customer service representative at the Coney Island Store she too was denied proper compensation. Additionally, the plaintiffs and DeLesca identified numerous other delivery drivers and customer service representatives at the Coney Island Store they believe also were denied proper compensation. Although some of the alleged facts are unique to individual plaintiffs, such as Bissainthe's allegation regarding the delivery money stolen from his locker, there remains a common accusation that the management of the Coney Island Store prevented the store's delivery drivers and customer service representatives from being fully compensated for the regular and overtime hours that they worked either by forcing them to work off-the-clock or by modifying their computerized payroll records.

For the purposes of conditional certification, the court finds that plaintiffs have met their burden of demonstrating they are similarly situated to a putative class of delivery drivers and customer service representatives who worked at the Coney Island Store within the past three years. A class, so constituted, would involve individuals with similar responsibilities, who worked in the same location, during the same general period, under essentially the same management, and pursuant to the same general policies regarding the hours they worked and how those hours were recorded and compensated. Domino's defense to these claims—as demonstrated by the pleadings, affidavits, and exhibits already submitted—focuses on the payroll policies of Domino's in general, and the actions of the Coney Island Store managers in particular. Moreover, certifying a class of delivery drivers and customer service representatives who worked at the Coney Island Store will not unduly prejudice Domino's in their defense of this action, as Domino's has already identified the managers working at the Coney Island Store during the relevant time period, and it has produced documentation regarding the official corporate payroll policies of Domino's, as well as the 2006 Payroll Changes Report for the Coney Island Store.

The cases cited by Domino's in opposing the certification motion reinforce the court's conclusion that plaintiffs have met their burden. In *Prizmic v. Armour, Inc.*, United States Magistrate Judge Marlyn D. Go declined to certify a class based on an unsupported allegation in the plaintiff's complaint that he and his co-workers were denied overtime compensation by their employer. No. 05-CV-2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006). In denying the certification motion, the court noted that "[a]lthough the plaintiff's burden at this initial stage is not onerous, '[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made." *Prizmic*, 2006 WL 1662614 at *2 (quoting *Camper v.*

*Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)). The court found that the plaintiff had failed to satisfy that burden because he had "made only general allegations in his complaint," and had "not submitted *any* evidence by affidavit or otherwise to demonstrate that he and other potential plaintiffs were victims of a common policy or plan that violated the law." *Id.* at *3. "Nor ha[d] plaintiff identified a single potential plaintiff," or even provided "the minimal requisite factual showing that he [or the other putative class members were] in an employee-employer relationship with defendants." *Id*. *Prizmic* is easily distinguishable from the situation at hand, in which numerous affidavits have been submitted, a specific pattern of FLSA violations has been alleged, and a number of other potential class members have been identified by name.

*Morales v. Plantworks*, upon which Domino's also relies, likewise lends little support to its position. *See* No. 05-Civ-2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006). In *Morales*, the plaintiffs' motion for certification was denied because the affidavits and exhibits plaintiffs submitted made "no reference to any . . . employee other than plaintiffs, and they ma[d]e no allegations of a common policy or plan to deny plaintiffs overtime." *Id*. at *2. The court found that the plaintiffs had "offered only a conclusory allegation in their complaint" that they were similarly situated to putative class members, and thus had failed to meet their minimal burden. *Id*. at *3. As noted above, the plaintiffs in this case have made a significantly greater evidentiary showing.

Domino's also argues that claims of "off-the-clock" work and altered time sheets inherently are too individualized to be pursued collectively. The court disagrees. District courts in this circuit regularly grant certification under similar circumstances. *See Bowens v. Atlantic Maintenance Corp.*, 2008 WL 1827439 at *24 (E.D.N.Y. Apr. 23, 2008) (approving a class of plaintiffs alleging "off-the-clock" claims) (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D.

50, 55 (S.D.N.Y. 2005); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238-39 (N.D.N.Y. 2002)). *Cf. Diaz v. Electronic Boutique of America, Inc.*, No. 04-CV-840E, 2005 WL 2654270 at *5 (W.D.N.Y. Oct. 17, 2005) (denying certification because "questions of fact would most likely differ for each plaintiff, as each worked in different locations with different supervisors.") (citing *Lawrence v. City of Philadelphia*, No. 03-CV-4009, 2004 WL 945139 at *2 (E.D. Pa. Apr. 29, 2004)).

Domino's additionally argues that plaintiffs' allegation regarding improperly edited time records lacks evidentiary support. In support of this claim, Domino's cites a decision from the Southern District of Ohio, in which the district court declined to certify a class of McDonald's employees who alleged that their time-keeping records had been improperly altered. *See Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862 (S.D. Ohio 2005). The *Harrison* court observed that "there is nothing inherently improper or unlawful about editing [] time-keeping records," and concluded that certification was unwarranted because the plaintiff had failed to produce specific admissible evidence indicating that McDonald's had acted in violation of the FLSA, as opposed to for some innocuous reason, when it modified her time records. *Id*. at 870. *Harrison* fails to persuade the court that a similar result is warranted in the present case. First, multiple plaintiffs in this case have specifically alleged, in sworn affidavits, that their time records were altered in order to prevent them from being paid for more than forty hours per week. Second, the *Harrison* court appears to have applied a more stringent standard than is applicable here. The standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification. "Once the [p]laintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly

situated to the named plaintiff." *Gjurovich*, 282 F. Supp. 2d at 105 (citing *Sbarro*, 982 F. Supp. at 262). The court is satisfied that plaintiffs have made the requisite showing.

Domino's next directs the court's attention to a decision of a district court in the Central District of California, *Smith v. T-Mobile USA, Inc.*, a case in which former employees of T-Mobile sought to certify a class consisting of "approximately 15,000 similarly-situated plaintiffs nationwide," alleging they had been forced to work off-the-clock and had been denied proper overtime compensation. No. CV-05-5274, 2007 WL 2385131 at *1 (C.D. Cal. Aug. 15, 2007). After reviewing the declarations of thirty-three "potential plaintiffs in 17 different states, who worked at 38 different store locations, under at least 41 different managers," the *T-Mobile* court concluded that "while plaintiffs' claim that they were illegally denied overtime pay is ostensibly a common legal nexus giving rise to a common injury, that commonality is illusory because the underlying allegations are disparate." *Id*. at *5. What Domino's fails to mention in citing *T-Mobile*, however, is that the court in that case actually had granted conditional certification to the class under the lenient "first-tier" analysis, and only denied certification after concluding, upon a motion for reconsideration, that discovery as to class issues had been completed, and that accordingly, the more stringent "second-tier" analysis should be applied. *See id*. at *4. Because the present case is still in its preliminary stages, the more lenient standard applies. *T-Mobile* thus lends no support Domino's position.

Based on the foregoing, the court grants plaintiffs' motion for preliminary collective action certification as to those delivery drivers and customer service representatives who worked

at the Coney Island Store within the past three years, i.e., between May 30, 2005 and May 30, 2008.[1]

B. The Brooklyn Area Stores

In addition to the employees of the Coney Island Store, plaintiffs also contend they are similarly situated to the hourly employees who worked at the five other Brooklyn Area Stores. Although plaintiffs, all of whom were employed at the Coney Island Store, have alleged enough facts to allow the court to certify a class of individuals who worked at the same location during the same period, those facts fail to demonstrate that plaintiffs are similarly situated to individuals who worked at a number of different locations, and under a number of different managers. The sum of plaintiffs' allegations regarding the other five Brooklyn Area Stores consist of (1) Laroque's claim that two managers of the Coney Island Store, Sharza and "Joseph," admitted to Laroque that they knew Domino's modified its employees' time records and forced its employees to work off-the-clock at the Brooklyn Area Stores; (2) Laroque's claim that St. Cyr, a delivery driver who worked at the 1772 Ralph Avenue location, told him that Domino's reduced her hours; and (3) Zama's generalized allegations of wrongdoing at every Domino's location he worked, including the Brooklyn Area Store located at 1479 Fulton Street.

Domino's responds to these allegations by denying any improper actions, submitting Sharza's affidavit, in which he denies ever telling Laroque of a policy or plan of forcing off-the-clock work or improperly editing time records at the Brooklyn Area Stores, and submitting De Nazareth's affidavit, which notes that Domino's has no record of an employee named Margareth St. Cyr ever working at 1772 Ralph Avenue. Thus, plaintiffs' factual support regarding the situation of the employees of the Brooklyn Area Stores is reduced to a hearsay statement that has

---

[1] FLSA claims must be commenced within two years after a cause of action accrues, or within three years after a cause of action accrues, if the violation is willful. 29 U.S.C. § 255. Plaintiffs allege willful violations, thus, three years is the appropriate limitations period.

14

been rebutted by the declarant (Sharza), a hearsay statement by an individual whose identity remains unknown ("Joseph"), a hearsay statement, the reliability of which has been seriously drawn into question (St. Cyr), and a an individual's statement that at sometime between 1995 and 2003, he worked at one of the Brooklyn Area Stores, was required to work off-the-clock at that location, and suspects that his time records were reduced while he worked there (Zama). Although plaintiffs' burden at this stage of the proceedings is modest, the court cannot justify certifying a class of plaintiffs, likely numbering in the hundreds, on the basis of such thin factual support. Accordingly, plaintiffs' motion for certification is denied with respect to the employees of the Brooklyn Area Stores.

    C.    <u>Form of the "Notice of Lawsuit"</u>

Determining what constitutes sufficient notice to putative plaintiffs in a Section 216(b) collective action is a matter left to the discretion of the district courts. *Gjurovich*, 282 F. Supp. 2d at 105-06 (citing *Hoffman*, 493 U.S. at 170). The court approves the format of plaintiffs' proposed notice, noting that it mirrors closely the reasonable format set out by a district court in the Southern District of New York in *Gjurovich v. Emmanuel's Marketplace, Inc*. *See id*. at 106-09. Domino's objects to the content of the proposed notice, however, claiming that it is overbroad, in that it purports to define the class:

> All current and former employees of [Domino's] who were or are employed within three (3) years preceding [the date of the Court's order approving this notice], in non-exempt positions (non-managerial employees) who worked at one (or more) of the following locations: [the Coney Island Store and the Brooklyn Area Stores], and whose hours worked were reduced by Domino's management, or who were required to perform unpaid "off-the-clock" work, or who were required to reimburse [Domino's] when the money they collected from customers was lost or stolen or who did not receive overtime compensation at the rate of one and one-half times the regular rate at which they were employed for the hours they worked in excess of 40 in one week.

(Carabba Aff., Ex. G at 1-2.) As the class has now been certified, the court agrees with Domino's that this definition is overbroad. The court directs plaintiff to use the following class definition:

> All current and former employees of Domino's Pizza, LLC ("Domino's") who were or are employed within the past three (3) years, i.e., between May 30, 2005 and May 30, 2008, as delivery drivers or customer service representatives at the Domino's store located at 900 Coney Island Avenue, Brooklyn, New York 11218, and whose hours worked were reduced by Domino's management, or who were required to perform unpaid "off-the-clock" work, such that they were not paid for all of the hours that they worked and/or did not receive overtime compensation at the rate of one and one-half times the regular rate at which they were paid for hours they worked in excess of forty (40) in one week.

The court further directs plaintiffs to use the above definition consistently throughout the notice form, such that the exact same language is used in the "TO:" section, the "DESCRIPTION OF THE LAWSUIT" section, at least insofar that the description of plaintiffs' claims in that section should mirror the description of the claims of the potential plaintiffs in the other sections, and the "COMPOSITION OF THE CLASS" section.

Additionally, plaintiffs must omit any reference in the Notice of Lawsuit to claims stemming from allegations that plaintiffs or potential plaintiffs were required to reimburse Domino's when the money they collected from customers was lost or stolen, as that claim is unique to Bissainthe, and cannot be pursued collectively. Further, under the section titled "YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT," the date that potential plaintiffs must send their consent forms to plaintiffs' counsel must be more definite, as it is unclear how long plaintiffs' counsel will need to file the form with the court. This section should advise the potential plaintiffs to send their "opt-in" consent forms "to plaintiffs' counsel so that they are received by plaintiffs' counsel on or before [50 days from the date of the notice mailing]." Likewise, the section titled "EFFECT OF JOINING THIS CASE" should advise potential

plaintiffs choosing to be represented by separate counsel that their attorneys must send their "opt-in" consent forms "to plaintiffs' counsel so that they are received by plaintiffs' counsel on or before [50 days from the date of the notice mailing]." Plaintiffs' counsel then will have ten days to file with the court the consent forms of all the plaintiffs that have opted in to the lawsuit. Finally, the section titled the "EFFECT OF JOINING THIS CASE" must also advise the potential plaintiffs of their right to separate counsel with greater clarity. Instead of the present language, "Furthermore, you can join this lawsuit by counsel of your own choosing," the following language should be used, "Furthermore, you can join this lawsuit and be represented by counsel of your own choosing, payment of whose fees is your sole responsibility." Plaintiffs are directed to submit for the court's approval an amended form of notice incorporating the court's recommendations within ten business days of the date of this order, i.e., by June 13, 2008.

D. Identities of Potential Plaintiffs

Domino's is directed to produce, within ten business days from the date of this order, i.e., by June 13, 2008, the names and last known addresses of all individuals who worked as either a delivery driver or a customer service representative at the Coney Island Store within three years from the date of this order.

IV. Conclusion

For the foregoing reasons, plaintiffs' motion for an extension of time under Rule 6(b) to file affidavits is granted, and plaintiffs' motion for preliminary collective action certification under Section 216(b) of the FLSA is granted as to those delivery drivers and customer service representatives who worked at the Coney Island Store within the past three years, i.e., between May 30, 2005 and May 30, 2008. Within ten business days from the date of this order, i.e., by

June 13, 2008, plaintiffs are directed to amend the "Notice of Lawsuit" and submit the amended version for the court's approval, and Domino's is directed to produce the name and last known address of each potential plaintiff.

SO ORDERED

DATED:   Brooklyn, New York
         May 30, 2008

                                              _____/s/_____
                                              DORA L. IRIZARRY
                                              United States District Judge